902 So.2d 829 (2005)
Cindy BELLINO, Appellant,
v.
W & W LUMBER AND BUILDING SUPPLIES, INC., Appellee.
No. 4D03-3138.
District Court of Appeal of Florida, Fourth District.
March 30, 2005.
Rehearing Denied June 14, 2005.
*830 Julie K. Oldehoff of Oldehoff Law Offices, P.A., Stuart, for appellant.
Allison E. Butler and Leif J. Grazi of Grazi & Gianino, Stuart, for appellee.
SILVERMAN, SCOTT J., Associate Judge.
W & W Lumber & Building Supplies sued defendant Cindy Bellino for damages on unpaid invoices of $34,079.65 and to foreclose its mechanic's lien. After a two day non-jury trial, the trial court entered a final judgment for $12,765.16 in favor of W & W Lumber. Bellino moved for a rehearing, which the trial court denied.
Under the unique circumstances of this case, where Bellino accepted delivery and paid for a disputed item after the close of evidence at trial, we reverse the trial court's denial of the motion for rehearing. Given the amount involved, we also discuss the other issues raised on appeal in the *831 interest of judicial economy, even though the reversal of the rehearing order removes the finality of the judgment.
Bellino is the owner and general contractor of her own residence in Palm City. W & W Lumber is a building materials supplier.
During the course of construction, Bellino delegated the responsibilities of everyday construction to her son, George Edmunds. Among other things, Edmunds was in charge of completing the rough framing for the door openings and the interior doors.
Bellino also hired a subcontractor to install the doors and the trim work. The subcontractor had never worked with W & W Lumber prior to the job on Bellino's home.
Bellino entered into a credit agreement with W & W Lumber to purchase construction materials for the job. Under the credit agreement, Edmunds had the authority to charge payments. David Luisi, an outside salesperson for W & W Lumber, took all of Bellino's purchase orders.
The architectural plans for the house called for twenty-two 96-inch doors. During construction, Luisi and the subcontractor measured the rough opening in the drywall to ensure that the doors and jambs would fit. They discovered that the planned 96-inch doors would not fit into the frames. Instead, they concluded that the plans required modification to allow for the installation of 94-inch doors to correct the fitting problem. According to the subcontractor, cutting the 96-inch doors to fit would violate industry standards, affect the structural integrity of the doors, and potentially void the warranties. The subcontractor further stated that "it just makes an esthetically pleasing and more professional appearance for the doors to be of the same height."
The subcontractor authorized the installation of the 94-inch doors. Thereupon, Luisi placed an order for the doors. The subcontractor and Luisi were aware of a time crunch to complete the job. They informed Edmunds of the problems with the doors. Edmunds essentially said, "Let's make it work."
Luisi asked Jeff Hewson (the installer) to install the 94-inch doors. At the conclusion of the installation, the installer opined that the doors "looked about normal." Until he went to collect his paycheck, the installer heard no complaints about the height of the doors from either Bellino or Edmunds.
A second problem area involved disagreements over the kitchen cabinets that W & W Lumber was to deliver and install. The first two sets were deemed incorrect for the house. Prior to the third set being shipped to the house, W & W Lumber requested that Bellino pay for the parts upon delivery. Bellino refused to pay according to this arrangement.
At the end of the trial, which included the trial judge's walk-through of Bellino's home, the court entered an oral ruling permitting W & W Lumber to deliver the replacement cabinets. Between the last day of trial and the entry of the final judgment, the delivery was made and Bellino paid $20,199.
The trial judge entered a final judgment for W & W Lumber on May 21, 2003. The court found, in pertinent part, that the gap between the floor and the doors resulted from problems in the installation. It also ruled that "it was reasonable for the representative of W & W [Lumber] to have relied on the directions" of the subcontractor. Against the $34,079.65 amount of the lien, the trial judge credited Bellino with $1,200 for reinstallations, $1,141.66 for returned items, and the $20,199 that she had *832 paid for the doors after the end of the trial. The court found that $12,765.16 was owed and reserved jurisdiction to determine reasonable attorney's fees and to foreclose the lien if the amounts awarded were not paid.
The first issue on appeal involves the dispute over the doors. Bellino contends that she placed an order with W & W Lumber for the 96-inch doors. Instead of filling that order, W & W Lumber supplied her with 94-inch doors. Bellino further argues that her subcontractor lacked the authority to modify her order.
Viewing the evidence in the light most favorable to W & W Lumber, we agree with the trial judge that Bellino and Edmunds created the appearance that the subcontractor had the authority to authorize the change order with the doors.
Bellino next argues that the trial court erred by finding that "[p]roblems related to the gap between the floor and the doors were problems related to installation." She contends that the trial court's finding is both contrary to the evidence and to reason.
If a "ruling consists of a pure question of fact, the ruling must be sustained if supported by competent substantial evidence." State v. Glatzmayer, 789 So.2d 297, 301 n. 7 (Fla.2001). The trial court heard testimony that workers' installation of the flooring before hanging the doors contributed to the gap between the doors and the floor. The trial court heard evidence that the 96-inch doors would not have fit the frames once the flooring had been installed. There was also testimony that fixing the gap could easily have been accomplished by cutting down the frames or jambs or lowering the doors.
We find that competent substantial evidence supported the trial court's finding that the problem with the doors was due to their installation.
Another issue on appeal is whether the trial court erred when it denied Bellino's motion for rehearing "without prejudice" as to the kitchen cabinets.
We agree with Bellino that it was the obvious intent of the trial judge to be able to hold an evidentiary hearing concerning any problems relating to the cabinets that were delivered at the conclusion of the trial. Such problems are properly characterized as "newly discovered evidence" which was discovered in time to move for rehearing, so that relief would not be appropriate under Florida Rule of Civil Procedure 1.540(b)(2).
The trial court would have had the ability to adjust the amount determined to be owing in the final judgment only if it had granted the motion for rehearing and reopened the case. See Arleo v. Garcia, 695 So.2d 862 (Fla. 4th DCA 1997). Thus we agree with Bellino that the trial judge should have granted the motion for rehearing.
On the cross-appeal, W & W Lumber argues that the trial court erred when it declined to award prejudgment interest for the cost of the doors and cabinets from the date the debt became due.
Prejudgment interest from a mechanic's lien is due from the date the debt was due, even though there may exist a bona fide dispute as to how much is owed. See Parker v. Brinson Constr. Co., 78 So.2d 873, 874 (Fla.1955). "[T]he proper method of calculating prejudgment interest requires not only a liquidation of damages, but that a determination be made as to the date that the claim became fixed." Tolin v. Doudov, 626 So.2d 1054, 1056 (Fla. 4th DCA 1993). Prejudgment interest may not be assessable in favor of the contractor until after the giving of the final *833 contractor's affidavit. Center of Osceola, Inc. v. William Hicks & Sons, Inc., 549 So.2d 1048, 1049 (Fla. 5th DCA 1989).
The final judgment awarded prejudgment interest at twelve percent from February 13, 2002 to April 25, 2003 for the doors. W & W Lumber claims that this period is in error since it filed its final affidavit on May 9, 2002. We agree. On remand, if the trial judge determines that money is still owed, it should calculate and award prejudgment interest from May 9, 2002 to May 21, 2003, the date of the final judgment.
We reverse the order denying Bellino's motion for rehearing and remand for further proceedings.
WARNER and GROSS, JJ., concur.